UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SHELDON STONE, as Trustee of
THE STONE FAMILY TRUST,

                            Petitioner,

              -against-

THEATRICAL INVESTMENT CORP. and
JON PLATT,

                            Respondents.

------------------------------------------------------------X

JUDGE ENGELMAYER

14 CV 6494

Case No. 14-CV_____

**PETITION TO CONFIRM
ARBITRATION AWARD**



        Petitioner Sheldon Stone, as Trustee of The Stone Family Trust (the "Stone Trust"), by

his attorneys Cowan, Liebowitz & Latman, P.C., for his Petition to Confirm Arbitration Award

pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, respectfully alleges

as follows:

### NATURE OF THE ACTION

        1.      Pursuant to a broad arbitration clause in the parties' Joint Venture Agreement

made June 1, 2009, as amended (the "JVA"), Petitioner and Respondents participated in a

binding arbitration held in New York, New York, under the auspices of the American Arbitration

Association ("AAA").  A copy of the JVA, by which the parties formed a Joint Venture (the

"Joint Venture") to invest in theater productions, is attached as Exhibit A to the accompanying

Declaration of Ronald W. Meister ("Meister Decl.").

        2.      Following a period of pre-hearing discovery and preliminary rulings, a four-day

hearing on the merits, and pre- and post-hearing briefs, the AAA arbitrator issued a final award

(the "Award") in favor of the Stone Trust.  The award directed, *inter alia*, that Respondents

make various payments to the Stone Trust on specified dates, and continuing payments as the

shows in which the Joint Venture invested made further distributions.

3.     After submitting to the jurisdiction of the AAA and participating fully in over a year of pre-hearing proceedings, the hearing, and post-hearing submissions, Respondents have refused to make the required payments due under the Award.

4.     Petitioner brings this Petition to confirm the Award under Section 9 of the FAA.

## THE PARTIES

5.     Petitioner Sheldon Stone is an individual residing in the State of California.  Mr. Stone is co-Trustee of The Stone Family Trust, a revocable trust established and existing under the laws of the State of California that is the Claimant in the underlying arbitration, and has full authority to act on the Stone Trust's behalf.

6.     Upon information and belief, Respondent Theatrical Investment Corp. ("TIC") is a subchapter S corporation organized and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business in Massachusetts.

7.     Upon information and belief, Respondent Jon Platt is an individual residing in the Commonwealth of Massachusetts, and is the sole shareholder, officer and director of TIC, and signatory to the JVA.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Petitioner and the Respondents, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.     This Court also has subject matter jurisdiction over this case pursuant to the FAA (9 U.S.C. § 2), because the contract pursuant to which the arbitration was conducted involves interstate commerce.

10.     This Court has personal jurisdiction over Respondent TIC because, pursuant to the express terms of the JVA, it "irrevocably agree[d] to submit to the exclusive jurisdiction

2

of the courts, State and Federal, of the State of New York, New York County, for all purposes arising under and in connection with this Agreement." This Court has personal jurisdiction over Respondent Platt pursuant to Section § 301 of the New York Civil Practice Law and Rules, because Mr. Platt agreed to arbitrate in New York, New York and subsequently participated in the arbitration proceeding in New York, New York. This Court also has personal jurisdiction over Respondents pursuant to CPLR § 302, because Respondents transact business within New York State and/or contract to supply goods or services in New York State.

11.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), because the underlying arbitration that is the subject of this confirmation action took place in New York, New York, and pursuant to 9 U.S.C. § 9, by which a proceeding to confirm an arbitration award may be brought in the district in which the arbitration award was made, and by consent of the parties under the terms of the JVA.

## THE ARBITRATION

12.     On June 1, 2009, the Stone Trust and TIC entered into the JVA to form a Joint Venture for the purpose of making investments in Broadway and off-Broadway theater productions and national tours.

13.     The JVA provides that, "[a]ny dispute arising out of, in connection with, or in relation to this Agreement or the making or validity thereof, or its interpretation or any breach thereof, shall be determined and settled by arbitration before a single arbitrator in New York City, pursuant to the then-existing rules of the American Arbitration Association." JVA, ¶7. The JVA also provides that, "[a]ny award shall be final and conclusive upon the Parties." *Id.*

14.     From 2009 through 2011, the Stone Trust entrusted Respondents with approximately $1.66 million to invest in theater productions under the terms of the JVA.

3

15.     Respondents invested the funds of the Joint Venture, to which the parties contributed equally, in fourteen theatrical shows.  Most of those shows returned at least some capital to the Joint Venture, several made profits, and one – Book of Mormon – was one of Broadway's biggest hits.

16.     Nevertheless, despite receiving returns of capital and distributions totalling millions of dollars from the shows, Respondents returned to the Stone Trust nothing at all prior to commencement of the arbitration.

17.     Respondents not only failed to pay the Stone Trust its share of distributions and returned capital, but also breached fundamental provisions of the JVA, by failing to deposit Joint Venture funds in a separate trust account, failing to maintain basic accounting records, commingling Joint Venture funds with assets of Respondent Platt's other businesses, and taking tax deductions for Joint Venture expenses on Mr. Platt's personal company's tax returns.

18.     As a result of Respondents' continued failure to pay over its share of the investment returns, the Stone Trust commenced an AAA arbitration in accordance with the broad arbitration clause of the JVA.

19.     On February 22, 2012, the Stone Trust served upon Respondents a Demand for Arbitration, through which the Stone Trust sought an accounting of its interest in the Joint Venture and the payment of its capital account and its proportionate share of the previous and continuing proceeds generated from the theater productions in which the Joint Venture had invested.

20.     In accordance with the rules and procedures of the AAA, Laverne Y. Berry, Esq., was appointed as the arbitrator.  Ms. Berry is an experienced and well-qualified attorney and arbitrator.

4

21.    Over the course of the next year and a half, the parties participated fully in pre-hearing proceedings, during which they produced over seven thousand pages of documents, and litigated frequent discovery and procedural disputes.

22.    The Arbitrator conducted a hearing on four consecutive days on October 22 through 25, 2013, at which time the parties presented voluminous documentary evidence and the testimony of witnesses, including representatives of the parties, accountants for each side, and an expert on theater investments.

23.    Both parties were represented throughout pre-hearing proceedings and at the arbitration hearing by counsel of their choice, who were given the opportunity to present testimony and documentary evidence and to examine and cross-examine witnesses. Neither side requested that the Arbitrator issue a reasoned award.

24.    After conducting the hearing on the merits and reviewing the extensive documentation and legal briefs submitted by both sides, the Arbitrator rendered a written final award in several parts. The Arbitrator's Award is attached as Exhibits C – F to the Meister Declaration. Pursuant to the Award, Respondents, jointly and severally, were directed to:

    a.    Pay to the Stone Trust, by June 23, 2014, the lump sum of $307,388.54, plus interest at 9% per annum from May 23, 2014 until paid;

    b.    Pay to the Stone Trust $211,493.43 in pre-judgment interest;

    c.    Pay to a designated receiver all distributions from specified shows that Respondents have been holding since March 31, 2014;

    d.    Pay to a designated receiver all distributions from the Jumamosi Tour road company of Book of Mormon that had accrued since February 28, 2014;

    e.    Reimburse the Stone Trust for the costs and fees of the AAA previously paid by the Stone Trust; and

    f.    Continue to pay to the Receiver continuing distributions from specified shows, their road companies, and their subsidiary rights.

25.    To rectify Respondents' improper action in claiming Joint Venture expenses on Respondents' own tax returns, the Award further directed Respondents to file amended tax returns for the Joint Venture.

26.    To assure that future distributions from theater producers were not subjected to the same misappropriations in which Respondents had engaged prior to the arbitration, the Arbitrator designated Thomas Cyrana, an experienced theater accountant, to receive the continuing payments from the producers and distribute them to the Stone Trust and Respondents in the proportions fixed in the Award.

## RESPONDENTS' NON-COMPLIANCE

27.    Having participated fully in the arbitration process so long as there remained a possibility of prevailing, Respondents after issuance of the final Award resumed their recalcitrance and refused to pay any sums due under the Award.

## ENFORCEABILITY OF THE AWARD

28.    There has never been any dispute that the parties' disagreements were subject to arbitration, or that the issues upon which the Award was based were properly submitted to the AAA for determination.

29.    Section 9 of the FAA provides in relevant part that a prevailing party in an arbitration may apply to the Court for an order confirming the award, and the court "must grant such an order" unless the award is vacated, modified, or corrected as provided elsewhere in the Act.

30.    The Award was properly rendered by the Arbitrator on issues submitted by the parties for her determination, was not a product of corruption, fraud, partiality or undue means,

and is not otherwise subject to any of the narrow grounds for vacatur or modification under 9 U.S.C. §§ 10, 11.

    31.    Because of Respondents' failure to comply with the terms of the Award, confirmation of the Award is necessary to permit the Stone Trust to enforce it.

    32.    Unless immediate relief is granted to confirm the Award, the Stone Trust may be unable to collect the money due to it under the terms of the Award, and the Award may be defeated by the actions of Respondents.

    33.    This Petition is filed within one year of the issuance of the final Award.

## RELIEF REQUESTED

WHEREFORE, Petitioner respectfully requests that this Court grant relief in his favor and against Respondents as follows:

    A.    Confirming the Award;

    B.    Awarding Petitioner his costs of suit and his reasonable attorneys' fees incurred in bringing this action; and

    C.    Granting Petitioner such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 14, 2014               Respectfully submitted,

                            COWAN, LIEBOWITZ & LATMAN, P.C.

                            By:       *Ronald W Meister*

                                Ronald W. Meister
                          1133 Avenue of the Americas
                          New York, New York 10036
                          (212) 790-9200
                       *Attorneys for Petitioner*

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SHELDON STONE, as Trustee of the
THE STONE FAMILY TRUST,

                     Petitioner,                       Case No. 14-CV_____

          -against-

THEATRICAL INVESTMENT CORP. and
JON PLATT,

                    Respondents.
-------------------------------------------------------------------X

## NOTICE OF PETITION TO CONFIRM ARBITRATION AWARD

      PLEASE TAKE NOTICE that, upon the accompanying Petition to Confirm Arbitration Award, dated August 14, 2014; the Declaration of Ronald W. Meister, Esq., dated August 14, 2014, with exhibits thereto; and Petitioner's Memorandum of Law, dated August 14, 2014, Petitioner Sheldon Stone, as Trustee of The Stone Family Trust ("Petitioner"), by and through his undersigned counsel, will petition this Court at the United States Courthouse, 500 Pearl Street, New York, New York, 10007, for an order pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, confirming the final award in the arbitration between Petitioner and Respondents.

      PLEASE TAKE FURTHER NOTICE that, pursuant to Rule 6.1(b) of this Court's Local Rules, opposition papers and answering memoranda, if any, shall be served within fourteen days after service of this petition.

Dated: New York, New York
       August 14, 2014

                          COWAN, LIEBOWITZ & LATMAN, P.C.

                          By: _Ronald W. Meister_
                             Ronald W. Meister
                          1133 Avenue of the Americas
                          New York, New York 10036

(212) 790-9200
Attorneys for Petitioner

TO:

Tai-Heng Cheng, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010

Jeffrey Riffer, Esq.
Elkins Kalt Weintraub Reuben Gartside LLP
2049 Century Park East, Suite 2700
Los Angeles, CA 90067

29129/001/15019101 29129/001/1501910

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHELDON STONE, as Trustee of
THE STONE FAMILY TRUST,

                    Petitioner,

     -against-

THEATRICAL INVESTMENT CORP. and
JON PLATT,

                    Respondents.
-----------------------------------------------------------X

Case No. 14-CV_____

**DECLARATION OF
RONALD W. MEISTER, ESQ.
IN SUPPORT OF PETITION TO
CONFIRM ARBITRATION
AWARD**

      RONALD W. MEISTER, a member of the bar of this Court, declares under the

penalties of perjury:

Introduction

     1.      I am a shareholder of the firm Cowan, Liebowitz & Latman, P.C., attorneys

for Petitioner herein.  I submit this declaration in support of Petitioner's application to

confirm an arbitration award duly entered in an American Arbitration Association arbitration

between the parties hereto.

The Parties

     2.      Petitioner Sheldon Stone is an individual residing in the State of California.

Mr. Stone is co-Trustee of The Stone Family Trust ("Stone Trust"), a revocable trust

established and existing under the laws of the State of California that is the Claimant in the

underlying arbitration, and has full authority to act on the Stone Trust's behalf.

     3.      Respondent Theatrical Investment Corp. ("TIC"), co-Respondent in the

underlying arbitration, is, on information and belief, a Subchapter S corporation organized

1

and existing under the laws of the Commonwealth of Massachusetts, with a principal place of business in Massachusetts.

4.     Respondent Jon Platt ("Platt"), co-Respondent in the underlying arbitration, is, on information and belief, an individual residing in the Commonwealth of Massachusetts, and is the sole shareholder, officer and director of TIC, signatory to the underlying joint venture agreement and is, by his own testimony, "indistinguishable" from TIC.

The Joint Venture Agreement

5.     On or about June 1, 2009, the Stone Trust and TIC entered into a Joint Venture Agreement (the "JVA"), establishing a joint venture (the "Joint Venture") to which they were to contribute equal amounts of capital to invest in Broadway and off-Broadway theater productions and national tours chosen by Respondents.  The JVA is attached to this Declaration as **Exhibit A**.

6.     The JVA includes a broad arbitration clause providing that, "[a]ny dispute arising out of, in connection with, or in relation to the this Agreement or the making or validity thereof, or its interpretation or any breach thereof, shall be determined and settled by arbitration before a single arbitrator in New York City, pursuant to the then-existing rules of the American Arbitration Association."  JVA, ¶7.  The JVA further provides that, "[a]ny award rendered shall be final and conclusive upon the Parties."  *Id.*  Finally, the JVA provides, "each of the parties hereto irrevocably agrees to submit to the exclusive jurisdiction of the courts, State and Federal, of the State of New York, New York County, for all purposes arising under and in connection with this Agreement."  JVA, ¶8.

Nature of the Dispute

7.   From 2009 through 2011, pursuant to the JVA, the Stone Trust entrusted Respondents with approximately $1.66 million to invest in theater productions.

8.   Respondents invested the funds of the Joint Venture in fourteen theatrical shows. Most of those shows eventually returned at least some capital to the Joint Venture, several made profits, and one – Book of Mormon – is one of Broadway's biggest hits, and continues to distribute substantial profits.

9.   Nevertheless, despite receiving from the shows return of capital and distributions totaling millions of dollars, Respondents returned to the Stone Trust nothing at all through the end of 2012, over three years from the Stone Trust's original investment.

10.   As was established at the arbitration, and was never denied by Respondents, Respondents not only failed to distribute to the Stone Trust its share of distributions and returned capital, but also breached fundamental provisions of the JVA that were designed to safeguard the Stone Trust. Respondents failed to deposit Joint Venture funds in a separate trust account, commingled Joint Venture funds with assets of Respondent Platt's other businesses, and took tax deductions for Joint Venture expenses on Mr. Platt's personal company's tax returns while charging them against the Stone Trust's account.

11.   As also became clear during the course of the arbitration, Respondents engaged in a series of actions designed to deprive the Stone Trust of its proper share of the Joint Venture's receipts. Respondents improperly attributed to the Joint Venture a large number of shows in which Mr. Platt invested for his personal account, which in the aggregate lost over $2 million. They also improperly attributed to the Joint Venture the astonishing

3

sum of over $4 million in expenses (more than the total amount invested), which were in fact

expenses of Mr. Platt's personal investments, for which he took deductions on the books of

his personal company. Finally, Respondents improperly attempted to reduce the Stone

Trust's share of the shows' distributions to the Joint Venture.

History of the Arbitration

    12.    As a result of Respondents' continued failure to pay over any portion of the

Stone Trust's share of the investment returns, the Stone Trust commenced an AAA

arbitration in accordance with the broad arbitration clause of the JVA.

    13.    On February 22, 2012, the Stone Trust served upon Respondents a Demand for

Arbitration, through which it sought an accounting of its interest in the Joint Venture, the

payment of its capital account, and its proportionate share of the past and future proceeds

generated from the theater productions in which the Joint Venture had invested. A copy of

the Demand for Arbitration filed by the Stone Trust is attached hereto as **Exhibit B**.

    14.    In accordance with the rules and procedures of the AAA, Laverne Y. Berry,

Esq., an experienced and well-qualified attorney and arbitrator, was appointed as the

arbitrator.

    15.    Over the course of the next year and a half, the parties participated fully in pre-

hearing proceedings, during which they produced over 7000 pages of documents, and

litigated many discovery and procedural disputes. Among the Arbitrator's rulings were

orders requiring that Respondents account and pay quarterly to the Stone Trust its share of

returned capital and profit distributions. Because Respondents calculated that share in a

manner that the Arbitrator ultimately found to grossly understate profits and overstate

expenses by millions of dollars, Respondents had by the commencement of the arbitration hearing returned to the Stone Trust only $220,127 of its $1,665,000 investment, although the shows in which the Joint Venture had invested had by then returned capital and distributed profits exceeding $5,000,000.

16.     After due notice to both parties and pursuant to an agreed schedule governing pre-hearing matters and the hearing, each party through counsel submitted a Pre-Hearing Brief setting forth the background of the dispute, as well as facts and legal arguments relating to each contested issue.

17.     The Arbitrator conducted a hearing on four consecutive days on October 22 through 25, 2013, at which time the parties presented voluminous documentary evidence and the testimony of witnesses, including representatives of the parties, accountants for each side, and an expert on theater investments.

18.     The parties were represented throughout the pre-hearing proceedings and at the arbitration hearing by experienced counsel of their choice, who were given the opportunity to present testimony and documentary evidence and to examine and cross-examine witnesses.

19.     Following the hearing, at the Arbitrator's request, both sides submitted Post-Hearing Briefs that addressed the evidence introduced during the hearing and set forth their legal arguments.  Neither side requested that the Arbitrator issue a reasoned award.

20.     While awaiting the Award, Respondents continued to pay additional distributions to the Stone Trust pursuant to the quarterly accountings required by the Arbitrator's interim orders.  Respondents nevertheless continued to calculate their

distributions in a manner that the Arbitrator ultimately found greatly understated the Stone Trust's entitlement.

<u>The Arbitrator's Award</u>

21.     After reviewing the hearing testimony and the extensive documentation submitted, and considering the legal briefs submitted by both sides, the Arbitrator rendered a written final award in several parts, ruling as follows:

(a) On February 28, 2014, the Arbitrator issued a "Partial Final Award," which is attached to this Declaration as **Exhibit C**.  The Award directed Respondents, jointly and severally, to pay to the Stone Trust the lump sum of $ 911,694, plus pre-judgment interest at a rate of 9% per annum; and 35.72% of all future distributions to the Joint Venture from the fourteen "Authorized Shows" in which the Arbitrator found the Joint Venture had invested; plus that same percentage of distribution from their road companies and their subsidiary rights.  (The 35.72% reflects a priority payment to Respondents for administrative services.)  The February 28 Award also directed Respondents to make additional payments to the Stone Trust, including funds that Respondents were then withholding, plus all the administrative fees of the AAA and the compensation of the Arbitrator.

The February 28 Award was "partial" because it directed the parties to submit their calculations of pre-judgment interest, and directed Respondents to seek theater producers' consent to pay the Stone Trust's share directly to it, so as to avoid the commingling of funds and improper withholding of payments of which Respondents had long been guilty.

The February 28 Award further provided that, if Respondents were unable to obtain the producers' consent to make direct payments to the Stone Trust, the Arbitrator would

6

appoint an independent receiver to receive the payments and distribute them in specified proportions to the parties.

(b)  Following submissions by both sides on the outstanding issues of pre-judgment interest and appointment of a collection agent or receiver, and on Respondents' request for a recalculation of the lump sum payment due, the Arbitrator on May 23, 2014, issued a Second Partial Final Award, which is **Exhibit D** to this Declaration.

The May 23 Award reaffirmed the lump sum amount of $911,694 due to the Stone Trust, and made "particular note" that the Arbitrator had considered Respondents' arguments that the amount was miscalculated, and rejected them. (Exh. D, footnote 1).  The Arbitrator credited Respondents with an interim payment they had made since the February 28 Award, and a small overpayment they made in February 2014, leaving a balance due of $307,388.54, to be paid within thirty days, plus 9% interest from the date of the May 23 Award until paid. The May 23 Award also calculated the pre-judgment interest due to be $211,493.43.  It also directed Respondents to make appropriate amended tax filings to reflect the expenses attributable to the Joint Venture, so those expenses, which Respondents had previously reported on the returns of Mr. Platt's personal company, could be passed through to the Stone Trust.  The May 23 Award also revised the prior award by ordering that the administrative fees of the AAA and the compensation of the Arbitrator be borne equally by the parties, with Respondents ordered to reimburse the Stone Trust the sum of $6,225.00 for costs previously incurred by the Stone Trust.  Finally, after Respondents represented that they could not obtain the consent of any producer to make direct payments to the Stone Trust, the May 23 Award directed the parties to nominate individuals to serve as receiver.

7

(c)  Having received the parties' nominations of individuals to serve as receiver, the Arbitrator on June 23, 2014 issued a Final Award, incorporating the prior Awards, and selecting one of those individuals to receive distributions from the Joint Venture and distribute them to the parties in the proportions previously specified.  A copy of the Final Award is attached as **Exhibit E** to this Declaration.

(d)  On August 12, 2014, the Arbitrator issued a "Disposition for Application of Modification of Second Partial Final Award of Arbitrator," which restates and combines the provisions of the prior Awards, and clarifies the dates on which Respondents' payments are due.  The August 12 Disposition is attached as **Exhibit F** to this Declaration.

Respondents' Non-Compliance With The Award

22.     Having participated fully in the arbitration process for as long as there remained at least a theoretical possibility of prevailing, Respondents upon receiving the Final Award resumed their recalcitrance and refused to pay any sums due.  Those amounts include:

(a)  The $307,388.54 lump sum payment and the interest that has accrued since the May 23 Award;

(b)  The $211,493.43 in pre-judgment interest;

(c)  The Stone Trust's share of distributions that Respondents have been holding since March 31, 2014.  Based upon prior distributions, the Stone Trust's share of those amounts should total approximately $175,000;

(d)  Distributions from the Road Company of Book of Mormon known as the Jumamosi Tour that have accrued since February 28, 2014;

(e)  Costs and fees of the AAA previously paid by the Stone Trust; and

8

(f) Continuing distributions from the shows, their road companies, and their subsidiary rights.

23.     Respondents have also failed to make any amended tax filings as required by the Award.

Request For Relief

24.     Respondents have made clear that they do not intend to make the payments due under the Award in the absence of its confirmation by this Court.

25.     There has never been any dispute during the long history of this arbitration that the parties' dispute was subject to arbitration, nor that the issues upon which the Award was based were properly submitted to the AAA for determination.

26.     For over two years, Respondents participated fully in the arbitration, serving an answer, joining in the selection of an Arbitrator, complying with the Arbitrator's interim rulings, serving document requests, producing documents of their own, making payments at the Arbitrator's direction, submitting briefs, and actively litigating a four-day hearing.

27.     The JVA provides that the Award of the Arbitrator shall be "final and conclusive upon the parties."

28.     Section 9 of the FAA provides in relevant part that a prevailing party in an arbitration may apply to this Court for an order confirming the award, and the court "must grant such an order" unless the award is vacated, modified, or corrected as provided in the Act.

29.     In the JVA, the parties submitted to the jurisdiction of this Court for enforcement of the Award.

30.     The Award was properly rendered by the Arbitrator on issues submitted and contested by both sides for her determination.  There has never been the slightest claim of corruption, fraud, partiality or undue means.

31.     Because of Respondents' failure to comply with the terms of the Award, confirmation of the Award is necessary to permit the Stone Trust to enforce it.

32.     Unless prompt relief is granted to confirm the Award, the Stone Trust may be unable to collect the substantial sums due to it under the terms of the Award, and the Award may be defeated by the actions of Respondents.

WHEREFORE, Petitioner respectfully requests that this Court grant relief in its favor and against Respondents as specified in the Petition herein.

Subscribed and sworn under the penalties of perjury this 14th day of August 2014.

_____
Ronald W. Meister

# Exhibit A

## JOINT VENTURE AGREEMENT

JOINT VENTURE AGREEMENT ("Agreement") made as of the 1st day of June, 2009 (the "Effective Date") by and between Theatrical Investment Corp. ("TICorp"), with offices at 15 Lincoln Street, #392, Wakefield, MA  01880, and The Stone Family Trust, dated 11/17/89 ("Stone"), located at 12849 Chalon Road, Los Angeles, California  90049.

TICorp, Stone and any third party investors admitted pursuant to Paragraph 3(a) (each, a "Party" and collectively, the "Parties") desire to create a partnership to finance and/or produce theatrical productions (each, a "Production", and collectively, "Productions") of various plays (each, a "Play"). It is understood by both parties that the Agreement only relates to limited partner investments offered to and financed by TICorp. Accordingly, in consideration of the mutual promises and covenants made herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Joint Venture</u>. The Parties hereby form a partnership (the "Joint Venture") for the purpose of engaging in the business of financing Broadway or Off- Broadway Productions or National Tours of various Plays. Although the Parties intend to limit the scope of the Joint Venture to the purpose defined above, the Parties may jointly determine from time to time to finance or engage in other types of endeavors. The Parties shall execute a Business Certificate for Partners, which shall be filed promptly following the execution of this Agreement in the New York County Clerk's office. The Joint Venture shall remain in full force and effect until the final distributions from all Productions in which the Joint Venture has invested have been made or such earlier time as may be agreed by either Party.

2. <u>Exclusivity</u>.

    (a) <u>Time and Effort</u>. During the term of this Agreement, TICorp shall devote such effort and such time as may be necessary or advisable for the furtherance of the Joint Venture's success and profitability; provided, however, that each Party may pursue other theatrical and non-theatrical endeavors to the extent such endeavors do not interfere with or restrict such Party's ability to materially contribute to the success of the Joint Venture.

    **(b)** <u>First Look Deal</u>. Except by and through the Joint Venture, no Party shall have the right to finance (including, without limitation, co-produce, associate produce or any other form of production) any Broadway or Off-Broadway theatrical production or National Tour during the period in which investments in Productions may be made under this Agreement (the "Investment Period"), unless the Party shall offer the other Party or Parties a right of first refusal to elect to have the Joint Venture engage in such activity setting forth all information held by the offeror(s) with respect to such production, and the offeree(s) shall have five (5) business days after receipt thereof to accept such offer and contribute any additional funds that may be required. If such offer is accepted, such production shall become a Production of the Joint Venture under the terms hereof; provided, that if the offered opportunity shall be the right to invest in such production, the Joint Venture's participation in such production shall be limited to the opportunity available to the offeror(s). If the offeree(s) do not accept such offer within such five (5) business day period, the offeror(s) shall have the right to exploit such opportunity with respect to such production independently of, and with no obligation to account to, the Joint Venture and the offeree(s).

EXHIBIT

C2

SFT 00297

(c) Exceptions. The Parties acknowledge that TICorp has pre-existing rights and obligations with respect to the live stage theatrical productions and other exploitations of the plays entitled "Wicked" and "God of Carnage", which shall not be subject to the first look provisions of Paragraph 2(b).

3. Financing.

   a. Capital Contributions. Each of TICorp and Stone agree to provide $700,000 ("Initial Capital Contribution") to the Joint Venture, for an initial aggregate capitalization of $1,400,000 ("Initial Capitalization"), provided that in the event TICorp decides to raise some portion of the Capitalization from third parties, who shall be admitted as partners of the joint venture and shall become Parties to this Agreement. In such case, the new investment will be taken off-the-top, reducing each of TICorp's and Stone's required Capital Contribution equally. Any additional Capital Contributions will be mutually agreed by the Parties. All Capital Contributions shall be used for funding and/or producing Productions, operating the Fund and any other agreed upon endeavors.

   b. Investment in Productions. Investments under this Agreement may be made at any time during the Investment Period, which shall run from the Effective Date until May 31, 2010. (This Joint Venture Agreement will remain in effect in successive years unless Stone or TICorp terminate it in writing.) Any portion of the Capitalization not expended upon such date shall be returned pro rata pari passu to the Parties or re-invested pursuant to a Party's instructions. Investments may be made in the name of the Joint Venture or the name(s) of one or more of the Parties. Regardless of the name under which any investment in a Production utilizing Joint Venture funds is made, any distributions arising from such investment, whether from return of investment capital or investor net profits, shall be applied, first, to the payment of any out of pocket expenses incurred by the Joint Venture (other than those that Jon Platt would otherwise incur irrespective of this Agreement), and thereafter pro-rata pari passu to the Parties until they receive a full return of their Capital Contributions. Thereafter, (i) all distributions based on investor net profits of a Production remaining after the payment of all Joint Venture expenses shall be paid 20% to TICorp, with the remaining 80% thereof divided pro rata pari passu between the Parties in accordance with their Capital Contributions. The Joint Venture will distribute to each of the Parties either a K-1 or Form 1099 with respect to the operations of the Joint Venture in sufficient time for such Party to prepare an income tax return reflecting such activity.

   c. Costs. All losses and costs of the Joint Venture, to the extent they exceed amounts raised or earned by the Joint Venture, shall be borne equally by each Party.

4. Decisions. TICorp shall have the right to make all decisions regarding the Joint Venture including, without limitation, all decisions regarding the making and management of any investments in Productions made by the Joint Venture, any decisions as a producer or co-producer of the relevant Production.

5. Bank Account. All monies contributed to the Joint Venture shall be deposited in trust in a special bank account at a bank to be determined by the Parties, in the name of TICorp (provided such funds are not commingled with other funds unrelated to this Joint Venture), and TICorp shall be the sole signatory on such account provided, that TICorp may not sign any check, or authorize any payment, other than investments in Productions, distributions to the Parties in accordance with this Agreement, or payments for expenses of the Joint Venture.

6. Books and Records. There shall be maintained, at all times during the continuance of the Joint

SFT 00298

Venture, books and records prepared in accordance with good theatrical accounting practices, which shall reflect the full and complete financial operation of the Joint Venture and which shall be open for inspection at reasonable times by each of the Parties and their respective accountants or other representatives on reasonable prior notice. Each Party shall make available to the others, on the same basis, any records in its possession relating to the Joint Venture, the Plays or the Productions.

7. Disputes: Any dispute arising out of, in connection with, or in relation to this Agreement or the making or validity thereof, or its interpretation or any breach thereof, shall be determined and settled by arbitration before a single arbitrator in New York City, pursuant to the then-existing rules of the American Arbitration Association. Any award rendered shall be final and conclusive upon the Parties and a judgment thereunder may be entered in the highest court of the forum, state or federal, having jurisdiction. The terms of this Paragraph 9 shall survive the termination of this Agreement.

8. Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts to be made and entirely performed therein. Subject to Paragraph 9 above, each of the Parties hereto irrevocably agrees to submit to the exclusive jurisdiction of the courts, State and Federal, of the State of New York, New York County, for all purposes arising under and in connection with this Agreement and each Party hereby irrevocably agrees that receipt of notice as set forth under Paragraph 11 hereof shall be deemed sufficient service of process for all purposes under this Agreement.

9. Notices. Notice to the either of the Parties shall be sent to them at their respective addresses first set forth above by hand, telecopy (with confirmation following by mail), telegram, certified mail (return receipt requested) or overnight mail (i.e. Federal Express, Airborne Express or U.S. Postal Service) and shall be deemed given when actually received. Copies of all notices shall be sent to S. Jean Ward, Esq., Frankfurt Kurnit Klein & Selz, 488 Madison Avenue, New York, NY 10022.

10. Miscellaneous.

(a) If any provision of this Agreement is held to be invalid or unenforceable, all of the other provisions shall nevertheless continue in full force and effect.

(b) **This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, assigns, administrators, and legal representatives; provided, however, that, except as otherwise provided in Paragraph 3(a), no Party may assign or otherwise transfer its rights, obligations, or interest hereunder (other than its right to receive revenues), other than to a person or entity under common control with the assignor, without the prior written consent of the other Party.**

(c) Each of the Parties agrees to sign such further instruments in writing as may be required to effectuate the purpose and intent of this agreement.

(d) The failure of any Party to enforce at any time any of the provisions of this Agreement shall not be construed to be a waiver of such provisions or of such party's rights thereafter to enforce such provisions.

(e) This agreement constitutes the entire understanding between the Parties, replaces all prior understandings and agreements between them with respect to the subject matter of this Agreement and may not be modified orally.

(f) Captions are inserted for convenience only and shall not be deemed part of this Agreement for any purpose whatsoever.

(g) This Agreement may be executed by fax and in counterparts, all of which taken together shall constitute one and the same instrument.

**IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the date first set forth hereinabove.**

THEATRICAL INVESTMENT CORP.

By: Jon Platt   *PRESIDENT*

THE STONE FAMILY TRUST

By: Sheldon Stone

### Side Letter Dated December 28, 2009

The following provisions modify the JOINT VENTURE AGREEMENT ("Agreement") made as of the 1st day of June, 2009 (the "Effective Date") by and between Theatrical Investment Corp. ("TICorp"), with offices at 15 Lincoln Street, #392, Wakefield, MA 01880, and The Stone Family Trust, dated 11/17/89 ("Stone"), located at 12849 Chalon Road, Los Angeles, California 90049.

One, it is the intent of both parties that any incentive allocations (e.g., two-for-deals) offered to TICorp resulting from productions financed by the Joint Venture will be included as part of the Agreement for Stone. Specifically, distributions allocated through section 3b. of the Agreement will include any payments related to percentage of the producer's net profits deals.

Two, in the event that TICorp acts as a lead producer (i.e., a general partner), Stone will be offered the best terms available to any limited partner in each production ("Most favored Nations" clause) should he decide to invest.

Three, should TICorp finance Broadway, Off-Broadway or Touring Companies of shows separate from the activities of the Joint Venture, Stone shall be offered a right of first refusal to finance his proportionate share of such production, excluding any theatrical productions ITCorp has committed to produce or participate in prior to the Effective Date of the Agreement.

**IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the date first set forth hereinabove.**

THEATRICAL INVESTMENT CORP.

By: Jon Platt, *President*

THE STONE FAMILY TRUST

By: Sheldon Stone, *Trustee*

EXHIBIT
C3

SFT 00301

# Exhibit B

American Arbitration Association
*Dispute Resolution Services Worldwide*

COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION

**MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐*
*There is no additional administrative fee for this service.*

| Name of Respondent |  |  | Name of Representative (if known) |  |  |
|---|---|---|---|---|---|
| Theatrical Investment Corp. and Jon Platt |  |  | Jeff Riffer, Esq. |  |  |

| Address |  |  | Name of Firm (if applicable) |  |  |
|---|---|---|---|---|---|
| 15 Lincoln Street, #392 |  |  | Elkins Kalt Weintraub Reuben Gartside LLP |  |  |
|  |  |  | Representative's Address |  |  |
|  |  |  | 2049 Century Park East, Suite 2700 |  |  |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Wakefield | MA | 01880 | Los Angeles | CA | 90067 |
| Phone No. | Fax No. |  | Phone No. (310) 746-4406 | Fax No. |  |

| Email Address: JonBPlatt@gmail.com | Email Address: JRiffer@ElkinsKalt.com |
|---|---|

The named claimant, a party to an arbitration agreement dated June 1, 2009, which provides for arbitration under the
Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE Breach of contract, commingling funds, conversion of funds, and
related claims arising out of joint venture agreement to finance theatrical
productions as set forth in more detail on Attachment.

| Dollar Amount of Claim $ | Other Relief Sought: ☒ Attorneys Fees  ☒ Interest |
|---|---|
| $1.66 to $2 million | ☒ Arbitration Costs  ☐ Punitive/Exemplary  ☐ Other _____ |

| Amount Enclosed $ 2500 | In accordance with Fee Schedule: ☒ Flexible Fee Schedule  ☐ Standard Fee Schedule |
|---|---|

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
An attorney familiar with contract issues

| Hearing locale New York City  (check one) ☐ Requested by Claimant  ☒ Locale provision included in the contract |
|---|

| Estimated time needed for hearings overall: | Type of Business: Claimant Individual investor |
|---|---|
| _____ hours or 1-2 days | Respondent Entrepreneur |

Is this a dispute between a business and a consumer? ☐ Yes ☒ No Does this dispute arise out of an employment relationship? ☐ Yes ☒ No
If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required
by California law. ☐ Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration
Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity
to file an answering statement.

| Signature (may be signed by a representative)   Date: *Ronald W Meister*  Jan. 26, 2012 | Name of Representative Ronald W. Meister |
|---|---|

| Name of Claimant | Name of Firm (if applicable) |
|---|---|
| The Stone Family Trust | Cowan, Liebowitz & Latman, P.C. |

| Address (to be used in connection with this case) | Representative's Address |
|---|---|
| 12849 Chalon Road | 1133 Avenue of the Americas |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| Los Angeles | CA | 90049 | New York | NY | 10036 |
| Phone No. (213) 830-6464 | Fax No. (213) 830-8564 |  | Phone No. (212) 790-9255 | Fax No. (212) 575-0671 |  |

| Email Address: sms@LA-stones.com | Email Address: rwm@cll.com |
|---|---|

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as
provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.

PETITIONER'S ARBITRATION STATEMENT

Petitioner, The Stone Family Trust ("Stone") respectfully submits this statement pursuant to Rule R-4(a) of the Commercial Arbitration Rules of the American Arbitration Association (the "AAA"), in support of its Demand for Arbitration.

On or about June 1, 2009, Stone entered into a Joint Venture Agreement (the "Agreement") with respondent, Theatrical Investment Corp. ("TICorp"), for the purpose of engaging in the business of financing theatrical productions. Respondent Jon Platt is the President of TICorp and the signatory to the Agreement. The Agreement contains a provision for arbitration of disputes before a single arbitrator in New York City pursuant to the rules of the AAA.

The Agreement provides for an initial capital contribution of $ 700,000 each from Stone and TICorp, with any additional capital contributions requiring the mutual agreement of the parties. Subject to bookkeeping and financial requirements and restrictions designed to protect Stone, TICorp was granted the right to make all decisions regarding the making and management of any investments by the Joint Venture. Those requirements and restrictions included: (1) TICorp was to prepare and file a Business Certificate with the New York County Clerk; (2) all monies contributed to the Joint Venture were to be deposited in a trust account; (3) the funds were not to be commingled with any other funds; (4) TICorp was to maintain books and records reflecting the complete financial operation of the Joint Venture in accordance with good theatrical accounting practices; and (5) the records were to be open for inspection by Stone and its accountants on reasonable notice.

Following Stone's initial capital contribution pursuant to the Agreement, and further contributions in the amount of $ 965,000, Stone has sought unsuccessfully to obtain TICorp's compliance with the terms of the Agreement. While TICorp's President Jon Platt has provided occasional reports of investments, they have not complied with the terms of the Agreement, have not returned or accounted for any funds, and have by a variety of excuses resisted Stone's efforts to find out what they are doing with Stone's money. It appears, further, that TICorp, in multiple violations of the Agreement (1) did not file a Business Certificate with the County Clerk; (2) did not deposit Joint Venture funds in a trust account; (3) commingled funds; (4) failed to maintain proper books; and (5) refused to permit inspection of its records. As a result, Stone has received no proper accounting on its contribution or the assets of the Joint Venture, and TICorp is holding an unknown amount of Stone's money. Stone has accordingly served a notice of termination of the Joint Venture, but TICorp has still not properly accounted for its funds. Without a proper accounting, Stone cannot tell how much is owed to it, though from TICorp's informal reports on its investments, it should be entitled to large amounts. Stone therefore seeks a full and proper accounting and division of the venture's assets, with Stone receiving a return of his capital and his proportionate share of all approved productions and arrangements that were negotiated on behalf of the venture.

# Exhibit C

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL
-------------------------------------------------------------
THE STONE FAMILY TRUST,

             Claimant,                   Case No. 13-140-Y-00225-12 01

      -against-

THEATRICAL INVESTMENT CORP. and
JON PLATT,

             Respondents.
-------------------------------------------------------------

## PARTIAL FINAL AWARD OF ARBITRATOR

I, the UNDERSIGNED ARBITRATOR, having been designated in accordance with
the Arbitration Agreement entered into by the above-named Parties and dated as of June 1,
2009 (the "Joint Venture Agreement"), and having been duly sworn and having duly heard the
proofs and allegations of the parties, AWARD as follows:

1. (a) Within thirty days of the date of this Award, Respondents, jointly and severally,
shall pay to Claimant the sum of $911,694. This Award assumes that $98,847 in expense was
properly attributed to the Joint Venture and a priority payment of 20% to TICorp was due on the portion
of the funds received through September 30, 2013, which exceeds Claimant's capital contribution, as per
the Joint Venture Agreement at paragraph 3(b). Claimant will make appropriate filings to reflect the
expenses in the 2011 year.

1. (b) Respondent shall pay pre-judgment interest calculated at a rate of Nine percent
(9%) per annum on amounts that were due to Claimant at the time of termination and those
that later became due to Claimant, but were not paid. This interest shall be calculated from
April 1, 2012 until the date of this Award. For the purposes of this calculation, all expenses
will be recognized as of December 31, 2011, and Claimant shall submit a revised calculation
of pre-judgment interest within ten days after the date of this Award.

1. (c) Respondent shall pay interest calculated at a rate of Nine percent (9%) per annum from March1, 2014, until the amount set forth in paragraph 1(a) is paid to Claimant.

2. (a) Within ten days after the date of this Award, Respondents shall notify the producers of all of the shows listed on Exhibit A (the "Authorized Shows") that 35.72% [1] of the future distributions from the shows, their road companies, or subsidiary rights, that are otherwise payable to TICorp shall be paid directly to Claimant ("Direct Claimant Payments"). Respondents shall make all reasonable efforts to ensure that all Direct Claimant Payments be accompanied by appropriate accounting documentation.

2. (b)  Within twenty-one days after the date of this Award, Respondents shall report to Claimant and the Arbitrator as to whether the producers of the Authorized Shows will make Direct Claimant Payments.

2. (c)  If Respondents are unable to secure the consent of any producer to making Direct Claimant Payments, Respondent shall, within ten days of receipt of any distributions, forward those distributions in their entirety to an independent receiver to be appointed by the Arbitrator for distribution in the proper proportions to Claimant and Respondents.  The cost of compensating any receiver shall be borne equally by the parties.

2. (d)  TICorp shall continue to receive a 20% priority payment for as long as any distributions are made on account on any investment made by the Joint Venture in the Authorized Shows.  This priority payment is inclusive of any and all payments which TICorp might claim for ongoing expenses incurred by the Joint Venture.

2. (e)  If, as a result of distributions made on Authorized Shows since the last accounting to Claimant, funds are presently being held by Respondents, a share representing the total amount of the distribution, minus TICorp's priority share, minus

---

[1] The calculation of the 35.72% represents Claimant's share of 44.65% after payment of a 20% priority payment to TICorp.

TICorp's 55.35% equity share, shall be remitted to Claimant within ten days of the date of this award.

    3.   The Arbitrator shall retain jurisdiction over this matter solely for the purposes of: (a) reviewing Claimant's interest calculation as per paragraph 1(b); and (b) securing an independent receiver, if necessary, for all future distributions, as set forth in paragraph 2(c) above.

    4.   Final administrative fees of the American Arbitration Association and the compensation of the Arbitrator shall be borne by Respondents.  The final costs will be determined after Claimant and Respondent report as per paragraphs 1(b) and 2(b).

    This Partial Final Award is in full settlement of all claims submitted to this Arbitration except for those set forth in paragraph 3 above.  All claims not expressly granted herein are hereby, denied.

February 28, 2014
Date

Laverne Y. Berry

I, Laverne Y. Berry, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

February 28, 2014
Date

Laverne Y. Berry

## EXHIBIT A

## <u>AUTHORIZED JOINT VENTURE SHOWS</u>

1. 101 Dalmatians

2. View From the Bridge

3. Little House on the Prairie

4. Young Frankenstein (first tour)

5. Come Fly Away

6. Enron

7. Fences

8. Rock It Out

9. All About Me

10. Driving Miss Daisy

11. Book of Mormon

12. House of Blue Leaves

13. Rooster Byron

14. MFWTH

# Exhibit D

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL
------------------------------------------------------------
THE STONE FAMILY TRUST,

     Claimant,        Case No. 13-140-Y-00225-12

   -against-

THEATRICAL INVESTMENT CORP. and
JON PLATT,

      Respondents.
------------------------------------------------------------

## SECOND PARTIAL FINAL AWARD OF ARBITRATOR

  I, the UNDERSIGNED ARBITRATOR, having been designated in accordance with the

Arbitration Agreement entered into by the above-named Parties and dated as of June 1, 2009 (the "Joint

Venture Agreement"), and Claimant having been represented by Ronald Meister of Cowan, Liebowitz &

Latman, P.C. and Respondents having been represented by Jeffrey Riffer of Elkins, Kalt, Weintraub,

Reuben, Gartside, LLP, and Arbitrator having been duly sworn and having duly heard the proofs and

allegations of the parties, and having issued a Partial Final Award dated February 28, 2014 and a

Disposition for Application of Partial Final Award dated March 28, 2014, does AWARD as follows:

  1. (a) Respondents, jointly and severally, shall pay to Claimant the sum of $911,694[1] minus any

offsetting payments made by, or credits due to Respondents, jointly and severally ("Offsetting

Payments"). This Award assumes that $98,847 in expense was properly attributed to the Joint Venture and that a

priority payment of 20% to TICorp was due on the portion of the funds, which exceeded Claimant's capital

contribution, as per the Joint Venture Agreement at paragraph 3(b). ("Post Recoupment Distributions") This priority

payment is applicable to all Post-Recoupment Distributions received up to and inclusive of the date of this Award.

Offsetting Payments include a credit for a $41,697.32 overpayment made by Respondents as part of a $207,605.32

payment made on February 14, 2014, which did not account for TCI Corp's 20% priority payment due; and a

payment of $562,608.14 made by Respondents pursuant to Order #13 of March 28, 2013, for a total of $604,305.46.

Therefore, within 30 days of the date of this award, Respondents, jointly and severally shall pay the Claimant the

amount of $307,388.54.

---

[1] The Arbitrator takes particular note of and has considered Respondents' claim and supporting documents that
certain monies due to Claimant have been double-counted as both investment funds and funds still remaining due.

1. (b) Respondents, jointly and severally will make appropriate amended tax filings to reflect the expenses to the Joint Venture in the 2011 year.

1. (c)  Respondents, jointly and severally shall pay pre-judgment interest calculated at a rate of Nine percent (9%) per annum.  This interest shall be simple interest and shall be made on amounts that were due to Claimant at the time of termination and those that later became due to Claimant, but were not paid.  For the purposes of this calculation, the expenses of $98,847 will be recognized as of December 31, 2011; and Claimant is deemed to have reinvested certain funds in the Authorized Shows.  (The shows listed on Exhibit A constitute the "Authorized Shows" in this matter.)  The amount of interest due through the date of the Arbitrator's submission of this Award is $211,493.43.

1. (d)  After the date of this Award, Respondents, jointly and severally shall owe simple interest calculated at a rate of Nine percent (9%) per annum from the date of this Award until the amount of $307,388.54 is paid to Claimant.

2. (a)  Of the Authorized Shows, only The Book of Mormon is generating revenue and will be subject to ongoing distributions.  For the purposes of this Award, The Book of Mormon shall include *The Book of Mormon on Broadway* and *The Jumamosi Tour LP*.

2. (b)  After the issuance of the Partial Final Award, Respondents affirmed that they were not able to negotiate with producers of The Book of Mormon to make payments of any monies due to Claimant directly to Claimant.  Therefore, Respondents, jointly and severally and Claimant shall have 15 days to agree upon and secure a third-party collection agent or receiver.  If the Parties cannot agree, by 5pm EST, on day 15 after the date of this Award, each Party will submit to the AAA the names and qualifications of three (3) potential receivers, set forth in priority order.  A receiver will then be appointed by the Arbitrator within ten (10) days of receipt of the lists from the Parties.  If the Parties do not submit lists, the Arbitrator will appoint a receiver within thirty (30) days of the date of this Award.  The cost of compensating any receiver shall be borne equally by the parties.  The receiver's duties shall be limited to: (i) receiving Post-Recoupment Distributions, either directly from companies associated with The Book of Mormon or from Respondents, jointly and severally, and (ii) reviewing any profit-sharing statements supplied by companies.  The receivers shall have the authority to request back-up documentation sufficient to understand the payments from companies associated with The Book of Mormon and to share this

information with all Parties.  Any receiver shall not have the authority to audit The Book of Mormon companies.

2. (c)  TICorp shall continue to receive a 20% priority payment for as long as any distributions are made on account of The Book of Mormon.  This priority payment is inclusive of any and all payments which TICorp might claim for ongoing expenses incurred by the Joint Venture. In the event that TICorp's priority payment does not exceed $5000 in any given year, TICorp shall receive, in addition to all priority payments for that year, an amount from all Post Recoupment Distributions sufficient for TICorp to receive a total of $5000 under this paragraph 2(c).

2. (d)  If, as a result of distributions made on The Book of Mormon since the last payment made to Claimant on February 14, 2014, funds are presently being held by Respondents, Respondents then shall forward all such funds to the receiver within 5 days of his or her appointment.

The administrative fees of the American Arbitration Association totaling $14,450.00 and the compensation of the arbitrator totaling $23,370.00  shall be borne equally by the Parties. Therefore, Respondents jointly and severally, shall reimburse Claimant the sum of $6,225.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.

This Second Partial Final Award is in full settlement of all claims and counterclaims submitted to this Arbitration, and incorporates and supersedes the Partial Final Award and the Disposition for Application of Parties Final Award.  All claims not expressly granted herein are hereby, denied.

_May 23, 2014_____     _Laverne Y. Berry_____
Date/                                          Laverne Y. Berry

I, Laverne Y. Berry, Esq., do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument  which is my Second Partial Final Award.

_May 23 2014_____     _Laverne Y. Berry_____
Date                                          Laverne Y. Berry

# Exhibit E

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

In the Matter of the Arbitration between

Re: 13 140 Y 00225 12
    The Stone Family Trust
    and
    Theatrical Investment Corp. and Jon Platt

## FINAL AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into by the above-named parties and dated June 01, 2009,( the "Joint Venture Agreement"), and Claimant having been represented by Ronald Meister of Cowan, Liebowitz & Latman, P.C. and Respondents having been represented by Jeffrey Riffer of Elkins,Kalt,Weintraub, Reuben, Gartside, LLP, and Arbitrator having been duly sworn, and having duly heard the proofs and allegations of the Parties, and having previously rendered a Partial Final Award dated February 28, 2014, and Disposition for Application of Partial Final Award dated March 28, 2014, and Second Partial Final Award May 23, 2014,  does hereby, AWARD, as follows:

Thomas Cyrana, Managing Director and Principal of The RZO Companies, is appointed as Receiver to receive all future distributions to the Parties as the result of royalties paid by third-parties for the Authorized Shows  The Receiver shall make the following distributions :

1.      Twenty Percent (20%) to Respondents representing the on-going priority payment; thereafter

2.      Forty-Four and Sixty-Five One Hundredths Percent (44.65%) to Claimant; and the remainder to Respondents.

The Partial Final Award, Second Partial Final Award, and this Final Award taken together are in full settlement of all claims and counterclaims submitted to this Arbitration.  All claims not expressly granted herein are hereby, denied.

Date:  June 23, 2014

Laverne Y. Berry

I, Laverne Y. Berry, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

Date:  June 23, 2014

Laverne Y. Berry

# Exhibit F

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**

In the Matter of the Arbitration between:

Case Number: 13-140 Y  00225 12

The Stone Family Trust
-vs-
Theatrical Investment Corp. and Jon Platt

### DISPOSITION FOR APPLICATION OF MODIFICATION OF SECOND PARTIAL FINAL AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated June 1, 2009 ( the "Joint Venture Agreement"), and having been duly sworn, and having duly heard the proofs and allegations of the Parties, and having previously rendered a Partial Final Award dated February 28 ,2014, and Disposition for Application of Partial Final Award dated  March 28, 2014, Second Partial Final Award dated May 23, 2014, and Final Award dated June 23, 2014,  and Claimant having filed applications for Modification dated  June 12, 2014 and Respondents having replied June 27, 2014, and Claimant having filed additional documents on  June 30, 2014, and Respondent having submitted additional documents dated July 14, 2014 and transmitted to the Arbitrator on July 21, 2014, do  hereby, DECIDE, as follows[1]:

1. (a) Respondents, jointly and severally, shall pay to Claimant the sum of $911,694[2] minus any offsetting payments made by, or credits due to Respondents, jointly and severally ("Offsetting Payments").  This Award assumes that $98,847 in expenses was properly attributed to the Joint Venture and that a priority payment of 20% to TICorp was due on the portion of the funds, which exceeded Claimant's capital contribution, as per the Joint Venture Agreement at paragraph 3(b). ("Post Recoupment Distributions")  This priority payment is applicable to all Post-Recoupment Distributions received up to and inclusive of the date of this Award.  Offsetting Payments include a credit for a $41, 697.32 overpayment made by Respondents as part of a $207,605.32 payment  made on February 14, 2014, which did not account for TCI Corp's  20% priority payment  due; and a payment of $562,608.14 made by Respondents pursuant to Order #13 of March 28, 2013, for a total of  $604,305.46.  Therefore, within 30 days of the date of this award, Respondents, jointly and severally shall pay the Claimant the amount of $307,388.54.[3]

1. (b) Respondents, jointly and severally, will make appropriate amended tax filings to reflect the expenses to the Joint Venture in the 2011 year.

1. (c) Respondents, jointly and severally shall pay pre-judgment interest calculated at a rate of Nine percent (9%) per annum.  This interest shall be simple interest and shall be made on amounts that were due to Claimant at the time of termination and those that later became due to Claimant, but were not paid.  For the purposes of this calculation, the expenses of $98,847 will be recognized as of December 31, 2011; and Claimant is deemed to have reinvested certain funds in the Authorized Shows.  (The shows listed on Exhibit A constitute the "Authorized Shows" in this matter.)  The amount of interest due through May 23, 2014, the date of the Arbitrator's Second Partial Final Award, is $211,493.43.  Payment of $211,493.43 is due within thirty (30) days of the date of this Disposition for Application of Modification of the Final Award.

1. (d) After the date of the Second Final Partial Award, May 23rd, 2014, Respondents, jointly and severally shall owe simple interest calculated at a rate of Nine percent (9%) per annum from the date of this Award until the amount of $307,388.54 is paid to Claimant.

2. (a) Of the Authorized Shows, only The Book of Mormon is generating revenue and will be subject to ongoing distributions.  For the purposes of this Award, The Book of Mormon shall include *The Book of Mormon on Broadway* and *The Jumamosi Tour LP.*[4]  Claimant is entitled to 35.72% of the profits distributed under this paragraph 2(a), that have accrued since  February 28, 2014.

2. (b) After the issuance of the Partial Final Award, Respondents affirmed that they were not able to negotiate with producers of The Book

---

[1]The Arbitrator, in an effort to consolidate the determinations previously set forth in the First Partial Final Award, the Second Partial Final Award and the Final Award, as well as any modifications to those awards, restates all Awards in this Modification.  Although the Second Partial Final Award clearly stated that it superseded the First Partial Final Award and the Disposition for Application of Modification of the Partial Final Award, some confusion on the part of the Parties remained.  Therefore, the terms of all Awards of this case are stated herein.

[2]The Arbitrator takes particular note of and has considered Respondents' claim and supporting documents that certain monies due to Claimant have been double-counted as both investment funds and funds still remaining due.

[3]The arbitrator notes that this was the position of the Parties as of the date of May 23, 2014 and that as of this date additional Offsetting Payments that have been made.  To the extent that this is true, this figure of $307,388.54 shall be reduced.

13 140 Y 00225 12 p2

of Mormon to make payments of any monies due to Claimant directly to Claimant.  Therefore, each Party was asked to supply a list of receivers, and in the Arbitrator's Final Award, Thomas Cyrana, Managing Director and Principal of The RZO Companies ("Receiver"), was appointed as Receiver to receive all future distributions to the Parties as the result of royalties paid by third-parties for the Authorized Shows.  The receiver's duties shall be limited to: (i) receiving Post-Recoupment Distributions, either directly from companies associated with The Book of Mormon or from Respondents, jointly and severally, and (ii) reviewing any profit-sharing statements supplied by companies.  The receivers shall have the authority to request back-up documentation sufficient to understand the payments from companies associated with The Book of Mormon and to share this information with all Parties.  Any receiver shall not have the authority to audit The Book of Mormon companies.

2. (c) TICorp shall continue to receive a 20% priority payment for as long as any distributions are made on account of The Book of Mormon.  This priority payment is inclusive of any and all payments which TICorp might claim for ongoing expenses incurred by the Joint Venture.  In the event that TICorp's priority payment does not exceed $5000 in any given year, TICorp shall receive, in addition to all priority payments for that year, an amount from all Post Recoupment Distributions sufficient for TICorp to receive a total of $5000 under this paragraph 2(c).  Receiver shall make payments in the following allocations: Twenty Percent (20%) to Respondents representing the on-going priority payment; thereafter Forty-Four and Sixty-Five One Hundredths Percent (44.65%) to Claimant; and the remainder to Respondents.

2. (d) If, as a result of distributions made on The Book of Mormon since the last payment made to Claimant on February 14, 2014, funds are presently being held by Respondents, Respondents then shall forward all such funds to the receiver within 5 days of this Disposition for Application of Modification of Final Award.

2. (e) Any distributions made on account of the Authorized Shows set forth in paragraph 2(a) above, shall be sent Receiver within 15 calendar days.  However, so as not to burden Receiver, and so as not to incur undue administration costs, the Receiver shall have the right to make distributions to Claimant on a quarterly basis.

The administrative fees of the American Arbitration Association totaling $14,450.00 and the compensation of the arbitrator totaling $23,370.00 shall be borne equally by the Parties. Therefore, Respondents jointly and severally, shall reimburse Claimant the sum of $6225.00, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Claimant.[5]

*This Disposition for Application of Modification of Second Partial Final Award is in full settlement of all claims and counterclaims submitted to this Arbitration, and incorporates and supersedes the Partial Final Award, the Disposition for Application of Partial Final Award, the Second Partial Final Award and the Final Award.  All claims not expressly granted herein are hereby, denied.*

I, Laverne Y. Berry, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Disposition for Application of Modification of the Second Partial Final Award.

August 11, 2014

_____
Laverne Y. Berry

13 140 Y 00225 12  p2

EXHIBIT A

AUTHORIZED JOINT VENTURE SHOWS

1.  101 Dalmatians

2. View From the Bridge

3. Little House on the Prairie

4.  Young Frankenstein  (first tour)

5.  Come Fly Away

6.  Enron

7.  Fences

8.  Rock It Out

9.  All About Me

10. Driving Miss Daisy

11. The Book of Mormon

12. House of Blue Leaves

13. Rooster Byron

14. MFWTH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHELDON STONE, as Trustee of
THE STONE FAMILY TRUST,

                    Petitioner,                  Case No. 14-CV_____

     -against-

THEATRICAL INVESTMENT CORP. and
JON PLATT,

                   Respondents.
-----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
## PETITION TO CONFIRM ARBITRATION AWARD

COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799
(212) 790-9200

Attorneys for Petitioner

15020971 1502097

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Am. Postal Workers Union v. United States Postal Serv.*,
   2014 U.S. App. LEXIS 10641 (2d Cir. June 6, 2014)....................................2, 11, 12

*Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*,
   2000 U.S. Dist. LEXIS 558 (S.D.N.Y. Jan. 24, 2000)........................................ 12

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)........................................................................ 1, 11

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*,
   333 F.3d 383 (2d Cir. 2003)............................................................................ 2

*DuBois v. Macy's Retail Holdings, Inc.*,
   533 F. App'x 40 (2d Cir. 2013).......................................................................... 2

*Hamerslough v. Hipple*,
   2012 U.S. Dist. LEXIS 154837 (S.D.N.Y. Oct. 24, 2012).............................. 1, 2, 11

*Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement*,
   668 F.Supp. 267 (S.D.N.Y. 1987)..................................................................... 11

*Millicom Int'l V N.V., v. Motorola, Inc.*,
   2002 U.S. Dist. LEXIS 5131 (S.D.N.Y. Mar. 27, 2002).................................... 11

*N.Y. Fragrance Inc. v. Union Sales Inc.*,
   2008 U.S. Dist. LEXIS 57306 (E.D.N.Y. July 24, 2008)................................... 12

*STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*,
   648 F.3d 68 (2d Cir. 2011)............................................................................ 2, 10

*Wallace v. Buttar*,
   378 F.3d 182 (2d Cir. 2004)......................................................................... 1, 11

*Walzer v. Muriel Siebert & Co., Inc.*,
   2011 U.S. Misc. LEXIS 2817 (Sup. Ct. New York County June 13, 2011)............................ 2

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
   103 F.3d 9 (2d Cir. 1997)............................................................................ 1, 11

**Statutes and Other Authorities**

9 U.S.C. § 2...........................................................................................................9

i

9 U.S.C. § 9..............................................................................................................1, 12

28 U.S.C. § 1332.............................................................................................................8

CPLR § 301.....................................................................................................................9

CPLR § 302.....................................................................................................................9

ii

## Preliminary Statement

Petitioner Sheldon Stone, as Trustee of The Stone Family Trust (the "Stone Trust"),

brings this proceeding pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C.

§ 9, to confirm an arbitration award.  Pursuant to a broad arbitration clause in a joint venture

agreement between the parties, and in accordance with the rules and procedures of the American

Arbitration Association ("AAA"), an arbitrator issued a binding final arbitration award (the

"Award") in favor of the Stone Trust directing that Respondents makes various payments to the

Stone Trust.  *See* the Declaration of Ronald W. Meister, Esq. ("Decl."), Exs. C-F, submitted

herewith.  The Award was properly made by a neutral and experienced Arbitrator after

proceedings in which Respondents fully participated, and was well within the broad scope of

the parties' arbitration clause.  On the limited review of such awards under the FAA, the Award

should be confirmed.

## The Legal Standard

The Second Circuit has repeatedly held that, "[t]he court's function in confirming or

vacating an arbitration award is severely limited." *E.g., Willemijn Houdstermaatschappij,*

*BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).  "Normally, confirmation

of an arbitration award is a summary proceeding that merely makes what is already a final

arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110

(2d Cir. 2006) (citation omitted).  The extremely narrow scope of judicial review is necessary

to avoid undermining "the twin goals of arbitration, namely, settling disputes efficiently and

avoiding long and expensive litigation." *Willemijn*, 103 F.3d at 12.  "Vacatur of arbitral awards

is extremely rare, and justifiably so." *Hamerslough v. Hipple*, 2012 U.S. Dist. LEXIS 154837, at

*8 (S.D.N.Y. Oct. 24, 2012).

15020971 1502097

An arbitrator is not required to provide an explanation for her award, nor does an arbitrator's failure to set forth her findings or reasoning constitute a basis to vacate the award. *See, Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004); *Walzer v. Muriel Siebert & Co., Inc.*, 2011 U.S. Misc. LEXIS 2817, at *10-11 (Sup. Ct. New York County June 13, 2011) (internal quotations and citations omitted). In this case, moreover, no explanation of the Award was required, because no party requested that the Arbitrator issue a reasoned award.

"[A] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011). "It is well established that courts must grant an arbitration panel's decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). In view of the substantial deference afforded arbitrators, even errors made by the arbitrator will not suffice to disturb the award. "[T]he court does not consider whether the arbitrator correctly decided the issue. As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *H amerslough*, 2012 U.S. Dist. LEXIS 154837, at *11 (citations omitted). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award." *D uBois v. Macy's Retail Holdings, Inc.*, 533 F. App'x 40, 41 (2d Cir. 2013) (citation omitted). Under the FAA, "[i]t is not enough . . . to show that the [arbitrator] committed an error — or even a serious error. . . [A]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Am. Postal Workers Union v. United States Postal Serv.*, 2014 U.S. App. LEXIS 10641, at *10 (2d Cir. June 6, 2014) (citing *Oxford Health Plans LLC v. Sutter*, - U.S. -, 133 S. Ct. 2064, 2068 (2013)).

15020971 1502097

## Statement of Facts

### The Arbitration Agreement

The underlying arbitration was conducted pursuant to a broad arbitration clause in the parties' Joint Venture Agreement made June 1, 2009, as amended (the "JVA"). (Decl. ¶¶ 5-6 & Ex. A). The JVA was entered into for the purpose of making investments in Broadway and off-Broadway theater productions and national tours. (*Id.* ¶ 5).

Paragraph 7 of the JVA provides that, "[a]ny dispute arising out of, in connection with, or in relation to this Agreement or the making or validity thereof, or its interpretation or any breach thereof, shall be determined and settled by arbitration before a single arbitrator in New York City, pursuant to the then-existing rules of the American Arbitration Association." *Id.*, Ex. A. Paragraph 7 also provides that the judgment on any arbitral award resulting from an arbitration commenced pursuant to the JVA "shall be final and conclusive upon the Parties." *Id.*

### Nature of the Parties' Dispute

From 2009 through 2011, pursuant to the JVA, the Stone Trust entrusted Respondents with approximately $1.66 million to invest in theater productions. (*Id.* ¶ 7). Respondents invested the funds of the joint venture in fourteen shows. (*Id.* ¶ 8). Most of those shows eventually returned at least some capital to the joint venture, several made profits, and one – Book of Mormon – is one of Broadway's biggest hits, and is still distributing substantial profits. (*Id.*).

Disputes arose between the parties concerning Respondents' breach of their obligations under the JVA, principally Respondents' failure to account to the Stone Trust and pay the Stone Trust its share of the proceeds generated from the joint venture's investments. (*Id.* ¶¶ 9-11). Despite receiving from the shows return of capital and distributions totaling millions of dollars, Respondents distributed to the Stone Trust nothing at all through the end of 2012. (*Id.* ¶ 9).

3

Respondents not only failed to distribute to the Stone Trust its share of distributions and returned capital, but also breached fundamental provisions of the JVA that were designed to safeguard the Stone Trust, including commingling joint venture funds with assets of Respondent Platt's other businesses and taking tax deductions for joint venture expenses on Mr. Platt's personal company's tax returns while charging them against the Stone Trust's account. (*Id.* ¶ 10).

Respondents also engaged in a series of actions designed to deprive the Stone Trust of its proper share of the receipts of the parties' joint venture. (*Id.* ¶ 11). Respondents improperly attributed to the joint venture a large number of shows in which Mr. Platt invested for his personal account, which in the aggregate lost over $2 million. (*Id.*). They also improperly attributed to the joint venture over $4 million in expenses (more than the total amount invested), which were in fact expenses of Mr. Platt's personal investments, for which he took deductions on the books of his personal company. (*Id.*). Finally, Respondents improperly attempted to reduce the Stone Trust's share of distributions to the joint venture. (*Id.*).

**History of the Arbitration**

As a result of Respondents' breaches of the JVA, and their continuing failure to pay over any portion of the Stone Trust's share of the investment returns, the Stone Trust on February 22, 2012, served upon Respondents a Demand for Arbitration before the AAA, through which it sought an accounting of its interest in the joint venture, the payment of its capital account, and its proportionate share of the past and future distributions. (*Id.* ¶¶ 12-13 & Ex. B). In accordance with the rules and procedures of the AAA, Laverne Y. Berry, Esq., an experienced and well-qualified attorney and arbitrator, was appointed as the arbitrator. (*Id.* ¶ 14).

Over the next year and a half, the parties participated in pre-hearing proceedings, during which they produced over 7,000 pages of documents and litigated many discovery and procedural disputes. (*Id.* ¶ 15). Among the Arbitrator's rulings were orders requiring that Respondents account and pay quarterly to the Stone Trust its share of returned capital and profit distributions. (*Id.*). Because Respondents calculated that share in a manner that the Arbitrator ultimately found to grossly understate profits and overstate expenses by millions of dollars, Respondents had by the commencement of the arbitration hearing returned to the Stone Trust only $220,127 of its $1,665,000 investment, although the shows in which the joint venture had invested had by then returned capital and distributed profits exceeding $5 million. (*Id.*).

After due notice to both parties and pursuant to an agreed schedule governing pre-hearing matters and the hearing, each party through counsel submitted a Pre-Hearing Brief setting forth the background of the dispute, as well as facts and legal arguments relating to each contested issue. (*Id.* ¶ 16).

The Arbitrator conducted a hearing on four consecutive days on October 22 through 25, 2013, at which time the parties presented voluminous documentary evidence and the testimony of witnesses, including representatives of the parties, accountants for each side, and an expert on theater investments. (*Id.* ¶ 17). Both parties were represented throughout the pre-hearing proceedings and at the arbitration hearing by experienced counsel of their choice, who were given the opportunity to present documentary evidence and to examine and cross-examine witnesses. (*Id.* ¶ 18). Following the hearing, at the Arbitrator's request, both sides submitted comprehensive Post-Hearing Briefs. (*Id.* ¶ 19). Neither side requested that the Arbitrator issue a reasoned award. (*Id.*).

15020971 1502097

While awaiting the Award, Respondents paid additional distributions to the Stone

Trust pursuant to the quarterly accountings required by the Arbitrator's interim orders. (*Id.* ¶

20). Respondents nevertheless continued to calculate those distributions in a manner that the

Arbitrator ultimately found greatly understated the Stone Trust's entitlement. (*Id.*).

**The Arbitrator's Award**

After conducting the hearing on the merits and reviewing the extensive documentation

and legal briefs, the Arbitrator rendered a written final award in several parts, ruling as follows:

(a) On February 28, 2014, the Arbitrator issued a "Partial Final Award" (attached as

Exhibit C to the Decl.), directing Respondents jointly and severally to pay the Stone Trust the

lump sum of $ 911,694, plus pre-judgment interest at a rate of 9% per annum, and 35.72% of

all future distributions to the joint venture from the fourteen "Authorized Shows" in which

the Arbitrator found the joint venture had invested, plus that same percentage of distributions

from their road companies and their subsidiary rights. (The 35.72% figure reflected a priority

payment to Respondents for administrative services). The February 28 Award also directed

Respondents to pay over to the Stone Trust funds that Respondents were then withholding, and

to pay all the administrative fees of the AAA and the compensation of the Arbitrator. (Decl., Ex.

C, *passim*).

The February 28 Award was "partial" because it directed the parties to submit their

calculations of pre-judgment interest, and directed Respondents to seek theater producers'

consent to pay the Stone Trust's share directly to it, so as to avoid the commingling of funds and

improper withholding of payments of which Respondents had long been guilty.

The February 28 Award further provided that, if Respondents were unable to obtain the

producers' consent to make direct payments to the Stone Trust, the Arbitrator would appoint

6

an independent receiver to receive the payments from the joint venture and distribute them in specified proportions to the parties.

(b) On May 23, 2014, the Arbitrator issued a Second Partial Final Award (attached as Exhibit D to the Decl.), reaffirming the lump sum amount of $911,694 due to the Stone Trust, and making "particular note" that the Arbitrator had considered Respondents' arguments that the amount was miscalculated, and had rejected them.  (Decl., Ex. D, footnote 1). *passim*).

(c) On June 23, 2014, the Arbitrator issued a Final Award (attached as Exhibit E to the Decl.), incorporating the prior Awards, and selecting one of the nominated individuals to receive distributions from the joint venture and distribute them to the parties in proportions previously specified.

(d) Finally, on August 12, 2014, the Arbitrator issued a Disposition for Application of Modification of Second Partial Final Award of Arbitrator (attached as Exhibit F to the Decl.), which restates and combines the provisions of the prior Awards, and clarifies the dates on which Respondents' payments are due.

## Respondents' Non-Compliance with the Award

Having participated fully in the arbitration process for as long as there remained at least a theoretical possibility of prevailing, Respondents upon receiving the Award resumed their recalcitrance, refused to pay any sums awarded, and ceased providing accountings to the Stone Trust.  The amounts due include:

(a) The $307,388.54 lump sum payment and the interest that has accrued since the date of the May 23 Award;

(b) The $211,493.43 in pre-judgment interest;

7

(c)  The Stone Trust's share of distributions that Respondents have been holding since March 31, 2014.  Based upon prior distributions, the Stone Trust's share of those amounts should total approximately $175,000;

(d)  Distributions from the road company of Book of Mormon known as the Jumamosi Tour that have accrued since February 28, 2014;

(e)  Costs and fees of the AAA previously paid by the Stone Trust; and

(f)  Continuing distributions from the shows, their road companies, and their subsidiary rights.

(Decl. ¶ 22).  Respondents have also failed to make appropriate amended tax filings as required by the Award.  (*Id.* ¶ 23).

<u>**Argument**</u>

**I**

<u>**THE COURT HAS JURISDICTION OVER THIS ACTION AND RESPONDENTS**</u>

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Petitioner (a citizen of California) and the Respondents (citizens of Massachusetts), and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See* Decl. ¶¶ 2-4.  It also has subject matter jurisdiction because the JVA, pursuant to which the arbitration was held, involves interstate commerce.  *See* 9 U.S.C. § 2.

This Court has personal jurisdiction over Respondent TIC, a subchapter S corporation, because, in the JVA, it "irrevocably agree[d] to submit to the exclusive jurisdiction of the courts, State and Federal, of the State of New York, New York County, for all purposes arising under and used in connection with this Agreement."  Decl., Ex. A, ¶ 8.  This Court has personal

8

jurisdiction over Respondent Platt, who conceded he was "indistinguishable" from TIC, pursuant to New York Civil Practice Law and Rules ("CPLR") § 301, in that Mr. Platt agreed to arbitrate in New York, New York and subsequently participated in the arbitration proceeding in New York, New York.  This Court also has personal jurisdiction over Respondents pursuant to CPLR § 302, because Respondents transact business within New York State and/or contract to supply goods or services in New York State.

II

## THE ARBITRATION AWARD MUST BE CONFIRMED

Section 9 of the FAA provides, in relevant part, that the court <u>must</u> grant an order confirming the award unless the award is vacated, modified, or corrected as narrowly prescribed in sections 10 and 11 of the Act.  *See, e.g., STMicroelectronics N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011).

The Award here is entitled to the deference required under the very modest standard governing review.  The parties submitted to arbitration under a broad clause covering "any dispute arising out of, in connection with, or in relation to this Agreement...or its interpretation or any breach thereof."  The arbitration indisputably arose out of that agreement, its interpretation, and its breach.  The procedures employed under the rules of the American Arbitration Association were those provided under the agreement.

There was never any dispute during the years of pre-hearing activities, or at the hearing itself, that the parties' dispute was subject to arbitration, nor that the issues upon which the Award was based were properly submitted to the Arbitrator for determination.  For over two years, Respondents participated fully in the arbitration, serving an answer, joining in the selection of an Arbitrator, complying with the Arbitrator's interim rulings, serving document

9

requests, producing documents of their own, making payments at the Arbitrator's direction, submitting briefs, and actively litigating a four-day hearing. The underlying arbitration was fairly administered; both parties participated and were represented by experienced counsel; the issues were squarely within the scope of the JVA; the documentation and legal briefing submitted by both sides were extensive; the arbitrator was neutral and experienced; and the Arbitrator rendered the Award based on issues submitted and contested by both sides for her determination. There has never been the slightest claim of corruption, fraud, partiality or undue means.

In these circumstances, the scope of judicial review is "extremely limited," *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997), and the confirmation of the Award is straightforward. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). It is not for this Court to determine whether the Arbitrator correctly decided the issue, so long as she acted within the scope of her authority. *Hamerslough v. Hipple*, 2012 U.S. Dist. LEXIS 154837, at *11 (S.D.N.Y. Oct. 24, 2012). It is sufficient that the Arbitrator construed and applied the parties' contract. *American Postal Workers' Union v. United States Postal Serv.*, 2014 U.S. App. LEXIS 10641, at *10 (2d Cir. June 6, 2014).

In view of Respondents' statements to the Arbitrator that they disagree with the Award, and their non-compliance with its terms, it is foreseeable that they will oppose confirmation of the Award. Mere disagreement with an arbitrator's determination, however, is no basis under the FAA upon which to vacate or modify an award. The Award here was wholly justified by the voluminous evidence and legal briefing submitted by both sides, and the remedies provided were well within the Arbitrator's broad discretion to fashion remedies, which even extend to "grant[ing] equitable relief that a Court could not." *Konkar Maritime*

10

15020971 1502097

*Enterprises, S.A. v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 271 (S.D.N.Y. 1987); *see also Millicom Int'l V N.V., v. Motorola, Inc.*, 2002 U.S. Dist. LEXIS 5131, at *19 (S.D.N.Y. Mar. 27, 2002) ("Arbitrators [] enjoy broad discretion to create remedies unless the parties' agreement specifically limits this power.") (citation omitted).  Certainly, under the broad arbitration clause here, and the FAA's modest standard governing review, the Arbitrator had far more than a "barely colorable justification" for the award rendered.  Even if the Arbitrator had made an error, or even a serious error, that would be insufficient to avoid confirmation of the Award.  *Am. Postal Workers Union v. United States Postal Serv., supra.  Accord, e.g., Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) ("A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law.").

Nor are courts permitted to look behind the award of a lump sum payment, as was awarded here, since to do so would necessitate an impermissible review of the merits.  *See, e.g., Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, 2000 U.S. Dist. LEXIS 558, at *27 (S.D.N.Y. Jan. 24, 2000) (refusing to modify award with respect to disputed calculation since, "even if the Court suspected a mistake . . . in order to intelligently modify the award, the Court would have to reexamine all the evidence and rule on the merits of the dispute.  Such action would require the Court to reach far beyond the scope of judicial review granted under the [FAA]") (citations omitted); *see also N.Y. Fragrance Inc. v. Union Sales Inc.*, 2008 U.S. Dist. LEXIS 57306, at *17 (E.D.N.Y. July 24, 2008).

Accordingly, pursuant to the express mandate of Section 9 of the FAA, the Court should confirm the Award in its entirety.

## Conclusion

11

15020971 1502097

For the foregoing reasons, Petitioner respectfully requests that this Court confirm the Award under Section 9 of the FAA.

Dated: New York, New York
       August 14, 2014

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.

By: _____
        Ronald W. Meister
        Scott P. Ceresia
1133 Avenue of the Americas
New York, New York 10036
(212) 790-9255
Attorneys for Petitioner

12